# SUPREME COURT.

GUSTAV RICHTER, appellant, agt. CONRAD POPPENHUSEN and another, executors, &c., impleaded, respondents.

To make the *executors* of a deceased *partner* liable personally as partners, with the surviving partner, for debts created for the benefit of the firm, after the decease of such partner, it is necessary to show that the executors voluntarily entered into the partnership and employed the testators assets, which had come to them, in the trade.

It is not sufficient that the business is carried on by the surviving partner with the assent and encouragement of the executors, for it is his right and duty to do so, without either.

Nor do the executors incur any responsibility by allowing the share of the capital of the testator to remain in and be employed in the business of the partnership after his death, for the benefit of the *cestuis que trust*, when it is done in accordance with the testators instructions contained in his will or in the partnership agreement, but the assets so directed to be employed are liable to make good the debts contracted during their employment.

*Second District, Kings, General Term, February*, 1870.
*Before* J. F. BARNARD, TAPPEN & GILBERT, *Justices*.

ON the 6th day of October, 1865, John G. Perzel, as general partner, and Herman A. Schleicher, as special partner, formed a special partnership under the firm name of " John G. Perzel."

They commenced business in the city and county of New York, and continued to transact their business in New York up to the spring of 1866, when they removed their entire business from the county of New York to the county of Kings.

Herman A. Schleicher, the special partner, died on the 17 of July, 1866, leaving a will, by which he appointed

the defendants, Conrad Poppenhusen and A. Iwan Von Auw, Herman Funke and H. A. Cassabeer his executors.

This will was proved on the 11th of September, 1866, and the defendants, Poppenhusen and Von Auw, qualified as executors.

On the 3d of October, 1866, the defendants Poppenhusen and Von Auw, as such executors, commenced a suit against "John G. Perzel," the general partner of their deceased testator, to wind up the affairs of that firm, they refusing to continue it.

On the 28th of November, the plaintiff in this proceeding commenced an action in the supreme court, against John G. Perzel and A. Iwan Von Auw and Conrad Poppenhusen, executors of Herman A. Schleicher deceased, *by the service of a summons and complaint on John G. Perzel alone*, alleging that they sold and delivered to the defendants the property mentioned in the complaint, between the 20th of June and October 6th, 1866, nearly all of it, before the defendants became executors. The defendant *Perzel, alone*, put in appearance.

On the 5th of January, 1867, the plaintiff entered judgment against the defendant Perzel, for $562.76.

On the 9th of December, 1867, the plaintiff Richter, served on the defendants, Poppenhusen and Von Auw a summons, under § 375 of the Code, to show cause why they should not be bound by such judgment.

The defendants, Poppenhusen and Von Auw put in an answer denying each and every allegation in the complaint.

The case came on for trial on the 26th of January, 1869, before his Honor Judge GILBERT and a jury, when at the close of the plaintiff's case and on the defendant's motion, the court dismissed the proceedings.

The plaintiff introduced a large amount of testimony on the trial, to establish the fact that the special partnership of "John G. Perzel" became a general partnership by reason of various omissions, &c., of the special partner.

WEEKS & FORSTER, *attorneys and counsel for appellant.*

I. The defendants, Poppenhusen and Von Auw, were summoned, under § 375 of the Code, to show cause why they should not be bound by the judgment recovered by the plaintiff on 5th January, 1867. The affidavit required by § 378 accompanied this summons. The defendants appeared, and by their answer, a mere general denial, simply took issue on the allegations in such affidavit. And no other complaint was served on them. On the trial, before he rested his case, plaintiff proved the judgment for $562.75. He proved that no payments had been made on it, but that the whole amount was due and unpaid. He proved the interest, $81.08, making the total amount $643.83. On this proof plaintiff was entitled to recover.

II. Further: plaintiff proved a sale of the coal to the defendants. By the original articles of partnership, in case of the death of Schleicher, the capital contributed by him was to remain, and the business to be continued until the expiration of the term. Schleicher died July 17th, 1866, and letters testamentary were issued to Von Auw and Poppenhusen. Plaintiff learned of the change, and went to see them in order to know what he had to do about the delivery of coal. Poppenhusen's reference to Von Auw, and his interview with plaintiff, and the delivery of the coal in accordance therewith, and the part payment, hold defendants as purchasers. The transfer of the business to Brooklyn, without filing any certificate in Kings County, made the partnership a general partnership. The court so decided in *Van Riper* agt. *the same defendants*, tried at the same term. Besides this purchase of coal, they bought wool of Fleischhauer, who sued them for his pay, and they appeared by the same attorneys as Perzel, and finally paid his claim in full by work done at the mills. As late as October 21st, 1866, they purchased of Mr. Hill; in fact, they continued the business for three months after Schleicher's death. On this

evidence, the plaintiff was entitled to recover for his coal sold and delivered to them. *(Ex parte Garland,* 10 *Ves. Jr.,* 119; *Collyer on Partnership,* §§ 601–603; *Thomson* agt. *Brown,* 4 *John. Ch. R.,* 619–627; *Wightman* agt. *Townroe,* 1 *Maule & Selw.,* 412.)

III. Plaintiff's testimony, showing that, in October, 1866, Poppenhusen & Von Auw took possession of all the assets of the firm, was improperly excluded. The fact that this was done under color of orders, made in a suit to which Poppenhusen & Von Auw were plaintiffs, and Perzel, their partner, defendant, when each appeared by different attorneys, who consented to such orders, does not change the transactions.

The testimony offered, at *fols.* 85–90, was improperly excluded, and plaintiff's exception was well taken.

The so-called judgment of November 4th, 1866, on motion of Larned & Warren, attorneys for the executors, consented to by Perzel's attorneys, would have shown how the defendants diverted the firm property from the creditors entitled to it. Their transactions are, that defendants take possession of all the firm property, in the following manner: 1st, Perzel, as receiver, conveys the real estate, for less than the mortgage, to Poppenhusen. He conveys the personal property to Poppenhusen for $25,000, which Poppenhusen does not pay, and those parties and their counsel retain $9,014.77 of this $25,000, leaving $15,985.23, of which $6,840.87 is to be applied to repay disbursements of theirs on account of this real estate which brought nothing. It is thus proposed to leave for the creditors of this firm, only $9,144.36 of some $130,000, in money, which was put there only a few months before; after all which, Perzel is to be discharged as receiver, and these defendants seek to keep all the property of the firm.

The amount due on the mortgage is only $35,000, which has been assigned to Mr. Konig, who is also the bondsman for these defendants.

Further light is thrown on this conveyance of the real estate by the report of the sale, and the consideration of the deed.

The exclusion of the evidence showing the interference of the defendants with the firm's property was erroneous, and plaintiff's numerous exceptions to such exclusions should be sustained.

IV. The evidence as to the sale of the goods made at New York by Schleicher's firm, was improperly excluded, as the same tended to show such an interference in the business by Schleicher as to make him thus liable as a general partner.

V. The question whether plaintiff told Von Auw what Schleicher told him should have been allowed.

VI. The proof of the insolvency of Perzel was improperly excluded.

VII. The dismissal of the complaint was erroneous; plaintiff's exceptions were well taken; the trial was a mistrial; and the exceptions should be sustained, judgment reversed, and a new trial ordered.

IRA D. WARREN, *counsel for respondents.*

I. We will assume for the purpose of presenting our first proposition, that the firm of " John G. Perzel" became, as the plaintiff claims, a general partnership. The Code provides, § 375, " When a judgment shall be recovered against one or more of several persons jointly indebted upon a contract, by proceeding, as provided in § 136, those who were not originally summoned to answer the complaint, may be summoned to show cause why they should not be bound by the judgment in the same manner, as if they had been originally summoned."

The first requisite to sustain this proceeding is that the defendants shall be *jointly* indebted.

It is a new proposition, yet to be pronounced legal, that

a surviving partner and his deceased partners' executors are *joint debtors.*

They are not only, not joint debtors, but they cannot *legally* be joined in an action at law. This precise point has been several times decided. (*Voorhis* agt. *Childs' Exrs.,* 17 *N. Y.,* 354; *Higgins* agt. *Freeman,* 2 *Duer,* 650; *Grant* agt. *Shurter,* 1 *Wend.,* 150; *Lane* agt. *Doty,* 4 *Barb.,* 534; 1 *Chitty's Pleadings,* 50).

He can only sustain a suit in equity by alleging and proving the insolvency of the surviving partner, and that the partnership property has been exhausted. (*Trustees, &c.,* agt. *Laurence, Exrs., &c.,* 2 *Denio,* 577; *Cases cited above*).

Neither can a proceeding of this character be sustained against personal representatives of a deceased joint debtor. *Kellogg* agt. *Olmsted,* 6 *How.,* 487; *Foster* agt. *Wood,* 1 *Abb. N. S.,* 150; *Mills* agt. *Thursby,* 2 *Abb.,* 432).

The only provision in the Code for summoning representatives is § 376, which provides "in case of the death of a judgment debtor *after judgment,* the heirs, devisees or legatees of the judgment debtor, &c., may, after the expiration of three years, be summoned, &c., to show cause why the judgment should not be enforced against the estate in their hands, &c."

This does not apply to this case, as Mr. Schleicher died before any suit was commenced.

The plaintiff's proceeding is under § 375, and proceeds wholly upon the theory that the surviving partner and the executors of the deceased partner are *joint debtors.*

We have shown that they are not only, not *joint debtors,* but that they cannot legally be joined as defendants.

Where then is the authority for such a proceeding as this against Poppenhusen and Von Auw, the executors of the deceased partner, whether that deceased partner was a general or special partner?

We say there is no law authorizing the proceeding.

II. The plaintiff proved by himself, that on the 16th or

17th of September, 1866, (the plaintiff having qualified September 11th, 1866,) he called on Von Auw, one of the defendants, and Von Auw told him he would pay the back bill as soon as the estate was settled, and that the business was going on the same as before, only he wanted me to go on and deliver coal, &c., and I told him I would.

It may be claimed that under the eighth clause of the partnership agreement, coupled with this evidence, the defendants became partners with Perzel.

Laws of 1858, page 450, provides that the death of a special partner dissolves the firm, unless the articles of co-partnership that in such event the partnership shall continue, &c., in which case it may continue with the assent of the legal *representatives of the deceased parties, &c.* It has been held that this partnership was dissolved by the death of Mr. Schleicher. (*Walkenshaw* agt. *Perzel, 32 How.,* 239; *Poppenhusen* agt. *Perzel, Judge* GILBERT, *not reported*).

Even if the plaintiffs can claim that this statement of Von Auw, one of the executors, was an assent to continue the copartnership, it would not be sufficient. The statute requires the assent of the " legal *representatives,*" not one of them. Suppose there were ten executors, would it be claimed that one of them could by his assent alone continue this business? One executor could not bind the other executor for the estate by any such statement. (*Forsyth* agt. *Ganson,* 5 *Wend.,* 561; *McIntyre* agt. *Morris,* 14 *Wend.,* 97; *Cayuga Co. Bank* agt. *Bennett,* 5 *Hill,* 237; *Thompson* agt. *Peters,* 12 *Wheat,* 565; *Peck* agt. *Botsford,* 7 *Conn. Rep.* 172).

The statute requires the assent of "the heirs or legal *representatives,*" this means all the legal representatives, there is no pretence that Poppenhusen, the other executor, ever gave his assent or made any statements in regard to it.

On the 11th of September, 1866, letters testamentary were issued, and Poppenhusen and Von Auw qualified as executors.

On the 3d of October, 1866, Poppenhusen and Von Auw, executors, &c., commenced a suit against Perzel, the general partner, to wind up the affairs of the ffrm.

This repels the idea that any assent was ever given by either executor to continue the business.

III. Assuming that both executors gave their assent to continue the business, it was continued as a *special partnership*, and the defendants are not liable at all, and should not have been sued.

Assuming that it was a general partnership, then this proceeding could not be sustained for the reason stated in our first point.

We are at a loss to discover any theory upon which this proceeding can be sustained, whether the partnership continued a special one, or became general, as the plaintiff claims. The executors of the deceased partner never became co-partners with the survivor.

IV. There is nothing in all the plaintiff has proved which would make the firm of John G. Perzel, a general partnership. As this question arises in another case where all the facts are presented in a condensed form, we do not propose to discuss it here any further than just to make the point.

V. We ask that the judgment dismissing this proceeding be affirmed.

*By the Court*, GILBERT, J.—The issue tried was between the plaintiff and the defendants named as executors of Mr. Scleicher, deceased; and arose upon a denial of the allegation in the complaint that the plaintiff sold and delivered coal to the defendants, at various dates between 20th June, 1866, and 1st of October, 1866, at an agreed price therein stated.

The evidence showed a sale, in fact, of most of the coal to a partnership composed of the defendant Perzel and the deceased Mr. Schleicher, and a portion thereof to the surviving

. partner after the death of the latter. It was sought, however, to make the executors of Mr. Schleicher liable on the ground that they had carried on the partnership business in connection with the surviving partner, after the death of their testator.

The court below deemed the evidence insufficient to establish this fact, and dismissed the complaint. Upon a review of the evidence, we are satisfied that this ruling was correct. The material facts are these: The partnership between Mr. Perzel and the testator, was formed for the manufacture of woolen goods, and was to continue until October 2, 1870. The articles provided that, in case of the death of Mr. Schleicher the capital contributed by him, being $20,000, should remain for the benefit of his representatives, and the business should be continued until the expiration of the term. Mr. Schleicher died July 17th, 1866. The defendants qualified as executors on the 17th of September following.

Mr. Perzel, the surviving partner, was called as a witness by the plaintiff, and testified, that the sign put out on commencing business was "Pioneer Woolen Mills;" that he continued the business up to 5th October, 1866; and bought coal of the plaintiff and others, and whatever was required to carry on the establishment after Mr. Schleicher's death.

The plaintiff testified, that on the 16th or 17th September, 1866, he went to see the executors, to know what he had to do about delivering coal at the factory; that Mr. Poppenhusen referred him to Mr. Von Auw; that he told Mr. Von Auw he had a contract with Mr. Schleicher to deliver coal for the Pioneer Woolen Mills; and asked him what he had to do as to the delivery of any more coal there, and that he had been advised not to deliver on Perzel's order. He further testified: "Mr. Von Auw told me, the business is going on just the same, 'we are going on with the business there just the same as before Mr. Schleicher's

death;' he wanted me to go on and deliver coal, only to be very careful that I only delivered what was wanted; that I should be paid, but that he would not pay anything before the estate was settled;" after that I went on and delivered coal; the amount so delivered was about one third of the coal sued for.

Two other witnesses testified to sales of goods to the firm of John George Perzel, after the death of Mr. Schleicher; and that after suits against the surviving partner and executors, the bills were paid by work at the mills.

This was all the evidence connecting the executors with the business carried on after the death of Mr. Schleicher, and we are of opinion that it is insufficient to make them liable as partners. To create such liability, it is necessary to show that they voluntarily employed the testator's assets which had come to them, in the trade.

It is not sufficient that the business is carried on by the surviving partner, with their assent and encouragement, for it was his right and duty to do so without either. The surviving partner succeeded, primarily, to the rights and interests of the partnership. He had the entire control of the partnership property, and the sole right to collect the partnership dues. (*Voorhis* agt. *Childs' exrs.*, 17 *N. Y.*, 356.) Nor do executors incur any responsibility by allowing the share of the capital of the testator to remain in, and be employed in the business of the partnership, after his death, for the benefit of the *cestuis que trust*, when it is done in accordance with the testator's instructions, contained in his will, or with the partnership agreement; but the assets so directed to be employed, are liable to make good the debts contracted during their employment.

To this extent the estate of a deceased partner will, in equity, be applicable to the liquidation of the demands of those who have become creditors of the partnership after his decease, (*Devaynes* agt. *Noble*, 1 *Mer.*, 616, 622; *Vulhamy* agt. *Noble*, 3 *Mer.*, 614; *Whightman* agt. *Townroe*,

1 *M. & S.*, 412; *Ex parte Garland*, 10 *Vesey*, 119; *Ex parte Holdsworth*, 1 *M. D. & D.*, 475; *Thompson* agt. *Andrews*, 18 *K.* 116; *Cutbush* agt. *Cutbush*, 1 *Beav.*, 184; *Thompson* agt. *Brown*, 4 *Johns. Ch.*, 62 ; *Story Part.*, § 70.) The executors, however, cannot be made liable personally without entering into the partnership. When this is done, then they become liable as partners, although they derive no profit personally, but are concerned only for the use and benefit of others, and this liability arises either by virtue of an actual agreement, or upon the familiar principle that they have held themselves out to the world as partners.

We have looked into the other exceptions, but find no error in the rulings of the court. The evidence rejected, however relevant to establish grounds of equitable relief, was wholly impertinent to the issue presented for trial.

The judgment should be affirmed with costs,